## Case No. 9,922.

MUNCIE NAT. BANK v. BARNITS et al.

[See Case No. 1,026.]

---

MUNDELL (UNITED STATES v.). See Case No. 15,834.

MUNFORD (ALSTON v.). See Case No. 267.

MUNFORD v. BALCH. See Case No. 790.

---

## Case No. 9,923.

In re MUNGER et al.

[4 N. B. R. 295 (Quarto, 90).] [1]

District Court, W. D. Michigan. 1870.[2]

BANKRUPTCY — FRAUDULENT INTENTION — INSOLVENCY—COMPROMISE—BONA FIDES.

1. Where there is no fraudulent intention, a dealer may, although insolvent, continue to sell his stock at retail, and endeavor to effect, if possible, a compromise with his creditors.

2. Where a trader makes a compromise with his creditors by making a sale of his stock, giving to the creditors part cash and part notes of the purchaser, the same being done in pursuance to an arrangement made with some of the creditors directly, and others through an agent, there is no fraud on the part of the debtor if an agent of one or more of the creditors exceeds his authority in accepting the compromise and the debtor is ignorant thereof.

3. When one debtor accepts a certain sum as a compromise, and he is not led to believe that he was getting as much as others, and he accepts the notes of his debtor's purchaser in part payment, he cannot be sustained in a petition against the debtor alleging a preference thereby under the bankrupt act [of 1867 (14 Stat. 517)].

In bankruptcy.

Dickinson & Dickinson and George Gray, for petitioners.

L. S. Hodges, for respondents.

WITHEY, District Judge.　Curren, Goodwin, Walker & Co., petition to have Munger & Champlin, copartners, declared bankrupts. There are five acts of bankruptcy charged, which I shall consider as involving but three questions. The first act charged is, that respondents, being insolvent, sold and transferred to divers persons, from time to time, portions of their stock in trade with intent to defeat the operation of the bankrupt act, in this; they ascertained, January 3d, 1870, by taking account of stock, that their liabilities exceeded their assets by about sixteen thousand dollars, and thereafter, in January, February, March, and up to about the 18th day of April, they were endeavoring to effect a compromise of their debts, but were unsuccessful, and at the same time were selling goods from their store to customers in the ordinary way of trade. It is claimed that they thus conducted their business with intent to prevent proceedings against them in bankruptcy, and with intent to defeat the

[1] [Reprinted by permission.]
[2] [Reversed in Case No. 3,487.]

operation of the law. The proofs show that respondents were not only insolvent, but knew they were; that some time in February they endeavored to effect a compromise of their debts at fifty cents, and were not successful, and afterwards in March and April, they sought again to effect a compromise at thirty-five cents, during all which period they continued trading at their store in Kalamazoo as usual, selling to customers at retail from day to day. But there is no proof of intent to defeat the operation of the bankrupt act, unless that kind of management of their business raises the presumption of such intent. In my opinion it does not; on the contrary, their efforts to settle with creditors without going through bankruptcy in court, was entirely legitimate, not prohibited by any provision of the bankrupt law; and continuing to sell goods in the usual way of trade, pending such negotiations, was entirely proper and justifiable, and what they ought to have done, so long as their intention was not fraudulent. Undoubtedly if the proofs showed an intention by the debtors to so conduct their business as to avoid paying their debts, or to prevent their property being applied to the payment of their debts under the provisions of the bankrupt law; preventing proceedings in bankruptcy against them with a view to defeat the provisions of the act, then would be shown such an intent as to require that they be decreed bankrupts. But I find no such fraudulent purpose from the proofs in this case.

Then follows three distinct acts of bankruptcy, but as they raise but one question, I shall consider them together. That question is whether a transfer made by respondents of all their assets not exempt, to George M. Colt, on or about April 18th, 1870, Colt being liable for them as indorser, was with intent either to prefer Colt, or to defeat the operation of the bankrupt act. It is shown that when respondents failed to effect a compromise at fifty cents, they made an effort to get a settlement at thirty-five cents. To this end one of the firm went to New York City, secured a meeting of a majority of their creditors there, stated to them their assets and debts, and asked a settlement at thirty-five cents. Nothing definite was then accomplished, but some of the creditors thought the debtors better keep their store open for the time being, and keep their stock replenished, and do the best they could until something definite could be done. Not long subsequently to that visit to New York, Tefft, Griswold & Kellogg of that city, filed against them a petition to have them declared bankrupts, Mr. Hodges, of Chicago, being attorney for such petitioning creditors. After filing the petition and procuring an order against respondents to show cause, he went to Kalamazoo, saw respondents and Mr. Colt, as a merchant of that place, and then learned that Colt was willing to purchase